DARWIN *v*. TOWN OF COOKEVILLE *et al.*

(*Knoxville*, September Term, 1936.)

Opinion filed October 17, 1936.

LEWIS S. POPE, of Nashville, and GEORGE B. HAILE, of Cookeville, for appellant.

FINIS E. HARRIS and HOLLADAY & CLARK, all of Cookeville, for appellee Town of Cookeville.

KEITH BOHANNON, of Cookeville, for appellee Putnam County.

NAT TIPTON and W. C. COOK, both of Nashville, for appellee State Highway Department.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

The Chancellor sustained a motion to dissolve an injunction in this cause on bill and answer, and dismissed the bill, filed to restrain the defendants, Town of Cookeville, County of Putnam, and State Highway Department, from proceeding with a certain described highway project, indicated by blueprints exhibited. Complainant appeals and insists that the Chancellor erred in (1) dissolving the injunction, and (2) dismissing the bill.

Complainant is (1) a taxpayer of the defendants town and county, and also (2) the owner of a bond of the town for $1,000, part of an aggregate issue of $885,000 of bonds alleged to be outstanding, and he sues in both capacities, charging that unless defendants are restrained by injunction touching the matters set forth in his bill he will suffer irreparable injury.

It appears that in the spring of 1935 representatives of the town, county, and State Highway Department together agreed that it was desirable and necessary for the convenience and safety of the public to re-route and relocate Highway No. 24 through the corporate limits of Cookeville and a short distance beyond, improving the grade surface, eliminating a dangerous grade railroad crossing, and avoiding a particularly congested business section, and circumventing a school zone. With this in view, these several representatives proceeded to enter into agreements among and between themselves for allocation of the expense incident to the proposed road project. Under the plan thus agreed upon, the State Highway Department would do this work, bearing the principal part of the expense incident to the improvement, the town and county assuming the obligation of furnishing and clearing the required rights of way, including any damages incident to changes in grade and width of the relocated roadway, this to be accomplished by agreements with or purchases from adjacent or affected property owners, or, where necessary, by condemnation. Having reached understandings and agreements mutually satisfactory to the representatives of the state, county, and municipality, the several parties proceeded with the project, and a considerable portion of the work had been done before the filing of this bill.

The complainant herein, Mr. J. C. Darwin, differing in judgment with these representatives and disapproving the project, and conceiving that his rights as a taxpayer and bondholder would be injuriously affected by the carrying out of this highway improvement as proposed, filed this bill, on the 16th of April, 1935, in the Chancery

Court at Cookeville, seeking to enjoin the town, county and State Highway Department from proceeding further, naming as defendant along with the said bodies politic, the commissioners of the town, the county judge, and the county highway commissioner, and the Commissioner of State Highways and Public Works. A *fiat* was obtained from the Chancellor of the First Chancery Court of Davidson County, an injunction bond of $500 being required and given. Full and complete sworn answers were filed by the various defendants denying the allegations of the bill, and these answers were before the Chancellor on the motion to dissolve.

While the bill is lengthy and contains charges that the proposed project is wholly unnecessary, and involves a wasteful expenditure of public funds, we do not understand learned counsel to maintain that complainant can usurp the wide discretionary powers vested by law in the duly chosen representatives of the state, county, and municipality in the making of public improvements, particularly the matter of relocating a street or roadway through the territory within their jurisdiction; and it will not be denied that the views and judgment of a single individual of a given community are necessarily outweighed by the composite view and judgment of the chosen representatives of the Governmental agencies involved. But counsel rely to sustain their claimed right of injunctive relief on certain alleged illegalities which we proceed to specify and consider:

*As to the county*: It is charged that a resolution adopted by the county court, authorizing an agreement between the county and the State Highway Department for allocation between them of the expense of the pro-

posed relocation is void, because it does not appear that certain detail requirements of the Public Acts of 1931, chapter 57 (Code, section 3252 (3), were fully complied with, particularly specifications of names, costs, etc. In the first place, as bearing on injunctive relief to prevent irreparable injury, the answer of the county shows that all of the needed rights had already been secured without cost, except only a small fraction of one acre, which had been condemned at a cost of $10. Moreover, disregarding the answers and considering the bill only as on demurrer, as is proper in reviewing the dismissal of the bill by the Chancellor (See *Mengle Box Co.* v. *Lauderdale County*, 144 Tenn., 266, 230 S. W., 963), as we read the copy of the proposal and resolution filed as Exhibit 2 to the bill, it contains on its face a substantial description of the new right of way lying in the county, 738.5 feet in length only. The damages or costs are to be shown only "if required." It may well be denied that the resolution is invalid, but conceding that it is, such invalidity could not affect the county or the complainant adversely. The act of 1931 relieves a county of condemnation costs incident to state highway construction, *unless* an agreement is made by the county to assume the burden. It is therefore obvious that the county can suffer no loss from proceeding under an invalid agreement to assume, and the alleged invalidity of this resolution affords no basis for an injunction restraining the county officers from proceeding under it, since no loss, irreparable or otherwise, could result from such proceeding. In this view the Chancellor was clearly justified in not only dissolving the injunction, but dismissing the bill as to the county. The other ground of attack directed to the county is that

514

Code, sections 10215-10217, providing how appropriations must be proceeded with, were not complied with, but we are not of opinion that these sections apply. No appropriation was made and none then applied for; these steps could not be taken until the sum of money required could be definitely ascertained and reported.

*As to the State Highway Commissioner*: The gravamen of the charge of the bill, as directed to injunctive relief against this defendant, is that unless restrained the State Commissioner will proceed to take physical possession of lands desired for the purposes of this project in advance of purchase, or condemnation, and that for reasons set forth, such lands are not subject to condemnation for such proposed purposes. The sworn answer of the commissioner denies this charge and disclaims any such purpose, and this justified the dissolution of the injunction as to him. Moreover, looking again to the bill alone on the propriety of dismissal as to the commissioner, we think no basis for injunctive relief appears, both because complainant is not the owner of any lands involved in the alleged proceeding, and because an adequate remedy is open to any affected landowner, who is free to resist an illegal or unauthorized taking by condemnation, or otherwise. It results that the Chancellor was clearly not in error in dissolving and dismissing as to the State Highway Commissioner.

*As to the Town of Cookeville*: Here, again, the sworn answer denies all allegations of facts and conditions relied on to support an injunction to prevent irreparable injury to complainant and shows a clear case of necessity for the project and of substantial permanent benefits to accrue to the municipality therefrom. It is

shown that the town will acquire, at very slight expense to it, a broad and permanently paved street from one corporate line to the other; will do away with a railroad grade crossing in the center of the town, a constant menace to life and limb; and will avoid the passing of through traffic through its most congested section and in front of its most largely patronized public school. It is also shown that the rights of way required had nearly all been acquired at practically no cost to the town and that no serious increased tax burden would result.

■ However, again looking to the bill alone, and admitting its allegations of fact, the right to injunctive relief appears to be rested on (1) the charge that the charter act under which the town commissioners had office is void, and they therefore are without legal authority to act for the town. For the purposes of this proceeding and disposing of the right to an injunction, we deem it unnecessary to pass on the question raised as to the validity of the charter act of 1917 (Priv. Acts 1917, chapter 706). It is sufficient to say that the commissioners in office are the acting and recognized representatives of the Town of Cookeville, with the status of *de facto* officers, if not *de jure,* and until deposed their acts as such must be given effect.

■ ■ It is charged (2) that the commissioners have failed to provide for a sinking fund, or funds, for the redemption of the bonds of the town, of which complainant owns one, and that until and unless such provision is first made the commissioners may not lawfully incur expense, or make outlay of city funds for the proposed, or any like, public improvement. It is not charged that the town is insolvent, or that its municipal obligations are in de-

fault, or its bonds overdue, or the interest thereon unpaid. No emergency is shown which would justify the use of the injunctive power in restraining its officials from expending its funds in the usual and ordinary conduct of the municipal affairs, including the making of such repairs, extensions, and improvements of its streets as conditions may appear to them to demand. Dereliction of duty in the matter of maintaining sinking funds may be otherwise and in direct proceedings corrected. And, finally, it is charged (3) that as a part of this street or highway project it is proposed to condemn, or acquire at town expense, a strip of land for railroad use and not for street extension, location, or improvement. It is at this particular phase of the project that the attack of the complainant appears to be most vigorously directed. He is not himself the owner of any part of this strip of land. The owners are not complaining and, if they were, their remedy at law is adequate. But we understand the contention of complainant to be that, as a taxpayer of the municipality, he may resist by injunction an expenditure of municipal funds for the purchase of, or payment for, said strip of land for railroad, rather than street use. We gather from the bill and exhibit drawings that the strip of land in question is being acquired by the city for a relocation thereon of railroad tracks of the railroad which, as presently located, cross the main street of the town at grade; that this relocation of these tracks is a necessary incident of a proposed overhead street or highway crossing over these tracks; that this overhead crossing is an essential part of the proposed improvement project in and through the municipality. In this view the acquisition of this strip is primarily to afford an overhead crossing for highway traffic over railroad traffic,

and its use by the railroad enures primarily to the benefit of the users of the street or highway constructed and passing over it. An analogy may be found in cases of cuts and fills incidental to the location of highways, in which cases it becomes necessary to acquire property extending to the right and left of the highway itself for varying distances. See the recent case of *Central Realty Co.* v. *City of Chattanooga*, 169 Tenn., 525, 89 S. W. (2d), 346, holding such adjacent land is taken for a public use. Quite commonly, also, lands adjacent or contiguous to the highway proper are acquired for use as borrow pits from which needed soil is excavated; also rock formations where necessary material may be quarried. And so it frequently happens that in widening a street or highway buildings standing on the land required therefor must be moved back on to adjacent territory. The right to acquire this territory is generally recognized, the taking being for a public use, as a necessary incident of the improvement. This territory will not be a part of the highway, but will be in fact used for private purposes by those property owners whose original locations have been thrown into the street or highway proper. The owners are thus compensated by substitution. The right of the state, county, or city to acquire such adjacent lands and to pay therefor, and make compensation for the taking of such improvements as may be thereon, or for the relocation and reconstruction thereof, has never been questioned.

Here, broadly speaking, the city finds it necessary to relocate a roadway and, in order to clear an obstruction, here railroad tracks, to relocate and make provision on other territory for a present occupant. We see no valid reason for denying to the municipality the right, in the exercise of a sound discretion by its representatives, to

make a reasonable expenditure of the public funds for such a purchase. It is clearly an incident of a highway improvement, an incidental part of the cost thereof, with a direct benefit to the municipality proportioned to that resulting from the project as a whole.

It is, of course, to be conceded, as argued, that a municipality is without lawful authority to expend its funds for railroad purposes. But, as already suggested, when relocation of buildings or tracks, or other improvements, becomes necessary in order to construct advantageously and safely a public highway, it is competent and lawful for the state, county, or municipality projecting the improved highway to acquire lands and relocate thereon for mutual advantage such buildings or other improvements. Such expenditures found necessary under such conditions are primarily for a public use and are within the scope of the broad discretionary powers of the state, county, or municipality to open, extend, widen, elevate, depress, or otherwise improve streets and highways. See Code, section 3394 et seq.

The rule of compensation by substitution above noted is well supported by authority. A headnote to the case of *Dohany* v. *Rogers*, 281 U. S., 362, 50 S. Ct., 299, 74 L. Ed., 904, 68 A. L. R., 434, reads: "The taking, by condemnation proceedings, of land for the purpose of exchange with a railroad company for a portion of its right of way, required in widening a highway, is for a public use." That was a case growing out of a relocation and substitution of a highway between Pontiac and Detroit, Michigan. In the body of the opinion Mr. Justice STONE said, much in point here: "It is enough that, although the land is to be used as a right of way for a railroad, its acquisition is so essentially a part of the project for im-

proving a public highway as to be for a public use." In the earlier case of *Brown* v. *U. S.*, 263 U. S., 78, 44 S. Ct., 92, 94, 68 L. Ed., 171, Chief Justice TAFT had approved the principle involved, in this language: "A method of compensation by substitution would seem to be the best means of making the parties whole. The power of condemnation is necessary to such a substitution."

In *Fitzsimons & Galvin* v. *Rogers*, 243 Mich., 649, 220 N. W., 881, 885, the court said that the relocation "of the railroad right of way was inseparably connected with the project," and following the *Brown Case, supra,* and others cited, upheld condemnation under the highway law as for a public use "when in fact it is to be used for a railroad right of way and not for a highway," this in application, again, of the rule of compensation by substitution, to which the instant case may well be referred.

Other authorities in accord are *Pitznogle* v. *West M'd. R. Co.*, 119 Md., 673, 87 A., 917, 46 L. R. A. (N. S.), 319; *Smouse* v. *Kansas City Southern Ry. Co.*, 129 Kan., 176, 282 P., 183; *Biglow* v. *Draper*, 6 N. D., 152, 69 N. W., 570; *Rogers* v. *Bradshaw*, 20 Johns. (N. Y.), 735; Nichols on Eminent Domain, p. 1712.

It results that we find no error, and the decree of the Chancellor is affirmed.