William TRIGG et ux.,
Plaintiffs-Appellants,

v.

The MIDDLE TENNESSEE ELECTRIC MEMBERSHIP CORPORATION,
Defendant-Appellee.

Court of Appeals of Tennessee,
Middle Section.

Nov. 28, 1975.

Certiorari Denied by Supreme Court,
March 15, 1976.

Scott Daniel, Murfreesboro, for plaintiffs-appellants.

Marshall E. Duggin, Woodbury, for defendant-appellee.

## OPINION

DROWOTA, Judge.

This is an appeal from an order of the Rutherford County Circuit Court which granted the defendant's motion for judgment on the pleadings and dismissed the plaintiffs' complaint. Plaintiffs originally perfected an appeal to the Tennessee Su-

preme Court, however after an examination of the record by that Court and a determination by that Court that jurisdiction was in the Court of Appeals, this cause was transferred to this Court for disposition.

The plaintiffs, William and Ellen Trigg, are Rutherford County residents. Defendant, Middle Tennessee Electric Membership Corporation, is a Tennessee corporation engaged in the sale and distribution of electric energy in Rutherford County and vicinity and is subject to the Electric Cooperative Law of Tennessee as codified in Tennessee Code Annotated § 65–2501 et seq. In August, 1968, plaintiffs became members of defendant cooperative whereby the defendant agreed to furnish electricity to the plaintiffs at their residence and the plaintiffs agreed to comply with the cooperative's rules and regulations. In their complaint, plaintiffs allege that they received a bill from defendant on Friday, June 6, 1969, for electricity used in the previous month. The bill stated that the net amount due was $15.53. If the net amount was not paid as of June 2, 1969, the gross amount of $17.04 was to be paid. Plaintiffs allege that immediately upon receiving this bill they wrote a check for the net amount, $15.53, and personally delivered the check to defendant's business office on the next business day. Plaintiffs allegedly explained to defendant's employee that they were paying only the net rates because the bill was not received until after the penalty date. Defendant accepted and cashed plaintiffs' check. At the next billing period defendant mailed plaintiffs another bill that was received on June 23 and that reflected an arrearage of $1.51 (the difference between $17.04 and $15.53). On the same date plaintiffs sent defendant a check for the net amount omitting the $1.51. This check was likewise accepted and cashed by defendant. Defendant and plaintiffs then exchanged a series of letters in which the defendant insisted and the Triggs denied that the plaintiffs owed the additional $1.51.

In late July, 1969, the Triggs received a bill of $12.21, plus the $1.51 defendant insisted was still due. Plaintiff twice tendered the $12.21 and defendant twice refused to accept the tendered amount because it did not include the $1.51. Plaintiffs then allege that they left on August 9, 1969, for a vacation, that sometime on or about August 19, 1969, defendant sent plaintiffs another bill that showed a total amount due of $28.64 (this amount included the following: (1) the $1.51 in dispute; (2) the previous month's bill, which defendant had refused to accept; (3) the present month's bill), and that the most recent bill indicated that service would be discontinued if the total amount due was not paid by September 12, 1969. On August 19, 1969, an employee of defendant went to the Trigg residence for the purpose of disconnecting plaintiffs' electricity. Finding the plaintiffs absent the employee left a notice on the plaintiffs' door that stated that service would have been terminated if the plaintiffs had been at home. Defendant's employee returned on August 26, and disconnected the electrical service.

When the Triggs returned on August 27, they allegedly found considerable damage.[1] Subsequently the plaintiffs brought this action to recover for the injury that allegedly resulted from the termination of their electrical service. Defendant moved for and received a judgment on the pleadings and a dismissal of the plaintiffs' complaint.

■ Our Rule of Civil Procedure 12.03 (Motion for Judgment on the Pleadings) and Federal Rule 12(c) are identical. The federal courts have held that in ruling upon a motion for judgment on the pleadings "[a]ll well pleaded allegations of the opposing party's pleading are to be taken as true,

---

1. Specifically the plaintiffs allege that all the foodstuff in their refrigerator and freezer had spoiled and had drained out onto the floor and carpets creating a stench and odor of decay, that their refrigerator icemaker had run continuously, flooding the kitchen and dining room, and that all the furniture had to be replaced or treated as a result of the stench and flooding.

and all allegations of the moving party which are denied are to be taken as false. Conclusions of law are not admitted nor should judgment on the pleadings be granted unless the moving party is clearly entitled to judgment." *John v. United States*, 138 F.Supp. 89, 95 (D.C.Wis.1956); *accord, Stanton v. Larsh*, 239 F.2d 104 (C.A.Fla. 1957). State courts have held that on an appeal from an order allowing a judgment on the pleadings, all well pleaded facts and all reasonable inferences drawn therefrom must be accepted as true. *Block v. Zahour*, 27 Ill.App.3d 487, 326 N.E.2d 506 (1975); *see, Rodgers v. Rodgers*, 53 Tenn. 489 (1871); *Darwin v. Town of Cookeville*, 170 Tenn. 508, 97 S.W.2d 838 (1936). We are in agreement with the interpretations given above on how the trial court should apply Rule 12.03. Thus, all facts alleged by the plaintiffs must be taken as true and the issue before us is whether upon those facts plaintiffs' complaint states a cause of action when it alleges injury that resulted from the termination of their electrical service for failure to pay a disputed claim. No Tennessee law exactly on point can be found.

Defendant maintains that the Triggs fail to state a cause of action in their complaint because they admit the following: that they are members in the cooperative; that members are bound by the rules and regulations of the cooperative; that they did not pay the extra $1.51 when they paid their May, 1969, electric bill. The rules and regulations of the defendant cooperative provide that "failure to receive bill will not release customer from payment obligation" and that the cooperative may discontinue service for nonpayment. The Triggs argue, in essence, that these payment provisions do not give defendant the right to discontinue, without actual notice, a customer's service for failure to pay a disputed sum, and that defendant is liable for any injury that results from such a termination.

█ A company supplying electricity to the public has the right to cut off service to a customer for nonpayment of a just service bill and the company may adopt a rule to that effect. Annot., 112 A.L.R. 237 (1938). An exception to the general rule exists when the customer has a bona fide dispute concerning the correctness of the bill. *Steele v. Clinton Electric Light & Power Co.*, 123 Conn. 180, 193 A. 613, 615 (1937); Annot., 112 A.L.R. 237, 241 (1938); *see also* 43 Am.Jur., Public Utilities and Services, Sec. 65; Annot., 28 A.L.R. 475 (1924). If the public utility discontinues service for nonpayment of a disputed amount it does so at its peril and if the public utility was wrong (e. g., customer overcharged), it is liable for damages. *Sims v. Alabama Water Co.*, 205 Ala. 378, 87 So. 688, 690, 28 A.L.R. 461 (1920). Ordinarily the question whether the dispute between the customer and the utility was bona fide is for the trier of fact. *Utilities Operating Co. v. Pringle*, 177 So.2d 684, 685 (Fla.App. 1965).

█ We are aware that defendant's rules and regulations, which plaintiffs agreed to obey, require payment whether or not a bill is received by the customer. In our view, however, this rule does not resolve the conflict that arises when a customer, who is willing to and does pay a certain portion of the bill, disputes the amount due. A public utility should not be able to coerce a customer to pay a disputed claim. If the plaintiffs in the instant case had claimed that they did not have to pay *at all* for their electrical service because they did not receive a bill, then defendant clearly would have been justified in terminating the service. The plaintiffs, however, were willing to pay, but they insisted on receiving the discount. It seems unreasonable to require the plaintiffs to pay the gross amount if they did not receive a bill, as we must assume, until after the discount date. Even if we agree that the difference between the net and gross amounts is not interest, *Ferguson v. Electric Power Bd.*, 378 F.Supp. 787 (E.D.Tenn.1974), that amount is still extra and we do not feel that a public utility should be able to deprive a customer

of the discount when the customer did not receive a bill in time to pay at the discount rates. The customer, however, must persuade the trier of fact that he had a bona fide dispute; thus in this case the plaintiffs must prove that they received their bill too late to pay at the discount rate.

Defendant argues that the Triggs must have known that the discount date usually fell on the second day of the month and therefore the plaintiffs should have paid before that date if they wanted to receive the discount. But nothing in defendant's rules and regulations designates the second day of the month as the discount date; thus the Triggs could not know the discount date with certainty, nor could they know the amount owed, until they received the bill.

Moreover, we recognize that electric cooperatives in the state of Tennessee enjoy a monopolistic position that spawns certain rights and benefits. A concomitant of these rights and benefits is a duty to use a corresponding degree of care to protect the public. We hold that in Tennessee, a public utility, when terminating service to a customer, must act reasonably when the discontinuance of the service might present an obvious danger of damage to the property of the customer. *See, Washington Gas Light v. Aetna Casualty & Sur. Co.*, 250 Md. 325, 242 A.2d 802 (1968).

In the instant case, accepting all facts alleged by plaintiffs as true, the defendant acted unreasonably and was negligent in terminating the plaintiffs' service while they were on vacation. Even if we agree, arguendo, that plaintiffs were wrong in not paying the extra $1.51, the facts alleged, if true, would support a judgment against defendant for negligence in the manner in which it exercised its right to disconnect. Defendant's employee was able to ascertain that the Triggs were not home the first time he stopped to disconnect the electrical service. When the employee stopped the second time, the notice from his first stop was still on the door and from all the circumstances the defendant's employee should have known that the plaintiffs again were not at home. Obviously he observed the meter running when he terminated the service. This should have alerted him to the possibility that a freezer or refrigerator was running and that termination of service might well result in damage.[2] We do not hold that a public utility can never terminate service when the customer is absent.[3] Nor do we hold that actual notice is *always* necessary. Here, however, it appears from the pleadings that the dispute had gone on for several months[4] and defendant's action in terminating service without actual notice to the customer when no one was at home was unreasonable under the alleged circumstances in this case.

The judgment of the trial court in granting defendant's motion for judgment on the pleadings and dismissal of complaint is accordingly reversed and the cause remanded for a trial on the merits, since we find that plaintiffs' complaint does state a cause of action. The costs of this appeal are to be taxed against the appellee.

Reversed and remanded.

SHRIVER, P. J., and TODD, J., concur.

2. Plaintiff, William Trigg, on July 2, 1969, in a letter to the defendant specifically referred to the possibility of refrigerator and deep freeze contents spoilage that could result if the electricity were disconnected.

3. For example, the customer may be absent over such an extended period that it would be unreasonable to expect the continuance of service, or an emergency may necessitate termination of service when the customer is not at home. *See Employers Casualty Co. v. Moyston*, 80 N.M. 796, 461 P.2d 929 (1969).

4. Plaintiff had paid the net May bill, which is in dispute, and defendant had accepted it. Plaintiff also paid and the defendant accepted the net June bill. The plaintiff had twice tendered the net July bill.