**Hunter JACKSON, et al., Plaintiffs,**

v.

**Danny L. DAVIS, et al., Defendants.**

**No. CIV–2–79–139.**

United States District Court,
E. D. Tennessee,
Northeastern Division.

Jan. 27, 1981.

4

Lodge Evans, Elizabethton, Tenn., for plaintiffs.

James H. Epps, III, Samuel B. Miller, II, Johnson City, Tenn., and S. J. Milligan and N. R. Coleman, Jr., Greeneville, Tenn., for defendants.

## MEMORANDUM OPINION

NEESE, District Judge.

 The plaintiffs Messrs. Hunter Jackson and Stanley Keebler (landlords) claimed that they, citizens of the United States, were deprived by the defendants City of Johnson City (City) and its building-inspection officials Messrs. Danny L. Davis and Joe Cannon and the Johnson City Power Board (Power Board) acting under color of ordinances of their rights against unreasonable searches, to due process of law, and to just compensation for the taking of their property for public use, Constitution, Fourth, Fourteenth and Fifth Amendments. 42 U.S.C. § 1983. They seek also a declaration that certain ordinances of the City, embodying its building code, are unconstitutional, as depriving them of their property without due process of law, Constitution, Fourteenth Amendment, supra.[1] They

---

1. The effect of the Court's direction of a verdict in favor of the defendants is a ruling, as a matter of law, that the conduct of the City and its officials, taken under the challenged ordinances, did not deprive the plaintiffs of any right protected by the Constitution. Therefore, since these ordinances were not applied to the plaintiffs in an unconstitutional manner, the Court must avoid any decision on the constitutionality of the ordinances in the abstract. It is well-settled that constitutional rulings will not be made: (1) in advance of the necessity of making them, (2) in broader terms than are required by the precise facts before the court, and (3) at the insistence of one who has failed to demonstrate that he was injured by the application of the law challenged as unconstitutional. See Rescue Army v. Municipal Court (1947), 331 U.S. 549, 569, 67 S.Ct. 1409, 91 L.Ed. 1666, 1678 (headnote 2).

sought both compensatory and punitive damages, the latter on the basis of malice toward them by the defendants.

Except for the nature and extent of damages to the landlords' building and whether the required notice that their building was "unsafe" and, therefore, unlawful was given them on February 15, 1979 (all subsequent dates herein were in that year), the salient facts are undisputed. The Court's disposition of the respective motions of the respective defendants for directed verdicts, Rule 50(a), Federal Rules of Civil Procedure, rendered the damage-issue moot; as will be seen, *infra*, the issue as to whether they received notice factually is not such as to raise a question of fact for the jury.

The Court viewed the evidence in the light most favorable to the landlords and drew therefrom all reasonable inferences in their favor, and it pointed so strongly in favor of the defendants that reasonable minds could have come to no other conclusion than that there was insufficient evidence to support the claims of the landlords. Thus, the motions were granted as a matter of law. *Morelock v. NCR Corp.*, C.A. 6th (1978), 586 F.2d 1096, 1104–1106[7], [8].

### The claim of deprivation of the right against unreasonable search

The landlords were the owners as tenants in common of the subject building, located at 314 West Oakland Street, Johnson City, Tennessee. They had rented such building as a dwelling to third parties, Mr. Jerry L. Brown and family, for the period, February 1–28, and that family had the exclusive right of occupancy and use of the building until midnight on the latter-mentioned date.

Inspectors of the City entered such premises at the request of the tenant Mrs. Brown on Wednesday, February 14 after she had asked that the building be inspected for safety of its electrical wiring system. In the course of their examination, the inspectors found the building "unsafe" and dangerous to human life and its wiring system defective and dangerous.

Pretermitting the making by the inspectors of their entry into these premises with the consent of the tenant who occupied them, the challenged conduct was not a deprivation of the landlords' own right against unreasonable searches. Any expectation of privacy in such premises was that of the third parties, Mr. and Mrs. Brown and their family, at the pertinent time. *Cf. Camara v. Municipal Court* (1967), 387 U.S. 523, 526, 87 S.Ct. 1727, 1729, 18 L.Ed.2d 930, 934 (where the lessee of a dwelling complained of an administrative search by building inspectors of premises without a warrant during the term of his lease). Each plaintiff's " * * * Fourth Amendment rights are violated only when the challenged conduct invades *his* [as in original] legitimate expectation of privacy rather than that of a third party * * *." *United States v. Payner* (1980), 447 U.S. 727, 731, 100 S.Ct. 2439, 2444, 65 L.Ed.2d 468, 474[3].

In view of the undisputed evidence of the lack of a violation of the aforementioned right of each plaintiff personally under the Constitution, Fourth Amendment, at the close of the evidence of the landlords, the Court properly directed a verdict for the defendants on this issue.

### Claim for punitive damages

The landlords claimed the conduct of the individual defendants was malicious toward them, entitling them to an award of punitive damages. There was no evidence of such malice; indeed, to the contrary, the landlord Mr. Keebler testified that, in his view, neither individual defendant acted maliciously but only "did their jobs" as required of them by their employment. In view of the absence of any evidence of malice against the landlords, the Court properly directed a verdict for the defendants at the same time as above on this issue.

### Claim of uncompensated "taking" of property right

There remained in evidence at the close of the evidence of the landlords an exhibit, stipulated at the pretrial conference to be authentic and admissible in evi-

dence, setting-forth the provisions of the (Southern) Standard Building Code for 1976 which had been adopted by ordinance of the City. (The landlords had excepted to the stipulation in the pretrial order herein of March 5, 1980 as to the authenticity of such exhibit, which exception remained under advisement at that time.) Such Code contained governmental regulations designed to promote the public safety and general welfare of citizens of the City and were not arbitrary or unreasonable and related rationally to the public's welfare by restricting certain uses of private property.

The application of these regulations by the City did not constitute a "taking" of the landlords' property for which compensation was to be paid. *Penn Central Transp. Co. v. New York City* (1978), 438 U.S. 104, 129, 98 S.Ct. 2646, 2661, 57 L.Ed.2d 631, 651, rehearing denied (1978), 439 U.S. 883, 99 S.Ct. 226, 58 L.Ed.2d 198; *Woodland Market Realty Co. v. City of Cleveland*, C.A. 6th (1970), 426 F.2d 955, 958[2]. For such reason, the Court properly directed a verdict for the defendants on the undisputed evidence at the same time on this issue.

### Claim against Power Board for denial of due process

The Power Board denied the landlords further electrical power service to their building after the tenants had instructed it to terminate service thereto on their account on Monday, February 26, and the landlord Mr. Keebler had instructed it on the same day to continue such service thereto at his expense thereafter.[2] The landlords claim that water from a wet-weather spring in the basement of such dwelling flooded such basement unless extracted therefrom by a sump-pump maintained therein. This pump operated on an electric motor; its source of power was the power which served the electrical-current system of the dwelling, and various occupants thereof were instructed by the landlords to keep the pump in operation at all times. The landlords claimed that such denial of

further electrical power service to their building resulted in the severe flooding of such basement and was the proximate cause of the severe damage they claimed to their building.

It was undisputed throughout that such denial of further electrical power service to the landlords was on the order of a building inspector of the City, and the sole function of the Power Board was the physical effectuation of that order at the premises. At the close of the evidence of the landlords, there had been no showing that such inspector was empowered by ordinance to disconnect such service to a building in which the wiring system was "defective or dangerous" and no evidence that such inspector had made a finding of defect or danger before so ordering the Power Board not to provide further service to such building. Accordingly, the motion of the Power Board for a directed verdict on this issue was denied at that juncture in the proceedings.

Thereafter, and after a preliminary evidentiary hearing, the Court admitted into evidence the ordinance so empowering such inspector. Thereafter also, there was undisputed evidence from Mr. Charles Bennett, a City (electrical) inspector of buildings, that he found the wiring system in the subject building "dangerous" on February 14, in that *inter alia* water had accumulated in its basement; that it was necessary to wade through that water to reach the electrical panel-box therein; and that such activity would endanger the life of any person so doing from electrical shock. Despite the dangerous condition found, Mr. Bennett testified he did not order the Power Board to deny the landlords further service until Monday, February 26, in observance of the City's policy of not terminating electrical power service to a dwelling from its source under such conditions until it had been vacated by its present occupants.

The landlords had a substantive "property" interest under Tennessee law in any action of the Power Board in denying

---

2. This Court indicates no opinion as to whether such gives rise to an action in a state court under state law for damages for breach of contract.

them further electrical power service to their building, and such denial was subject to procedural constraints under the Constitution, Fourteenth Amendment, Due Process Clause, if the denial rose to the level of a legitimate claim of entitlement thereunder. *Memphis Light, Gas & Water Div. v. Craft* (1978), 436 U.S. 1, 9, 98 S.Ct. 1554, 1560, 56 L.Ed.2d 30, 39[6]. The Power Board was obligated to provide electrical power service to the landlords without discrimination and without denial, " * * * 'except for good and sufficient cause' * * * and [was not permitted thereunder to] terminate service except 'for nonpayment of a just service bill' * * *." *Ibid.,* 436 U.S. at 11, 98 S.Ct. at 1561, 56 L.Ed.2d at 40[7]. It was undisputed in the evidence that the Power Board denied further service to the landlords " * * * 'for cause' * * *," *idem.,* so that they have not asserted against the Power Board " * * * 'a legitimate claim of entitlement' within the protection of the Due Process Clause. * * *" *Idem.*

■ That "cause" also arose under Tennessee law, albeit local law. It was stipulated at the pretrial conference that the Johnson City Code, § 9–9, entitled "Electrical Installations", had been validly adopted by the City, but those excerpts therefrom were not exhibited as evidence herein. The landlords withdrew the foregoing stipulation pretrial on their representation that they had evidence to offer of its invalid adoption. During trial, the defendants sought to exhibit such excerpts by stipulation of the parties. The landlords declined to so stipulate, and, after the aforementioned hearing, the Court found such adoption by ordinance valid and admitted those excerpts into evidence as an exhibit. It is provided therein, as follows:

*Sec. 9–9. Authority of building inspector to disconnect dangerous, etc. wiring systems.*

The building inspector shall have the right to disconnect all dangerous or defective wiring systems, in or upon any building, structure or premises, from its source of current, and it shall be unlawful for any person to reconnect the same until such system shall have been made safe and been approved by the building inspector or his designated representatives. (Code 1951, § 186.12e).

In the exercise of that right, such inspector disconnected such dangerous wiring system in the landlords' building by causing the Power Board to remove the source of current it had been or was providing thereto.

The foregoing ordinance was one of those " * * * acts of the municipality as the agent of the state for the preservation of peace and protection of persons and property * * *." *Walla Walla v. Walla Walla Water Co.* (1898), 172 U.S. 1, 8, 19 S.Ct. 77, 80, 43 L.Ed. 341, 345. It is thus, a "law" for purposes of the due process clause of the Constitution, Fourteenth Amendment. *Cf.* 56 Am.Jur.(2d) 371, Municipal Corporations, Etc., § 345. For the Power Board to have reconnected the wiring system of the building to its former source of current, and not to have denied further electrical power service to the landlords, would have violated the law; this constituted "good and sufficient cause" under the law for such denial. Therefore, at the close of all the evidence, the Court directed a verdict for the Power Board on this issue.

### *Claim against the City for denial of due process*

The remaining claim of the landlords is that they were denied procedural due process, Constitution, Fourteenth Amendment, when the City's inspector "condemned" their building without advance notice and ordered the Power Board to deny them further electrical power service. As stated, *supra,* the Court held under advisement at the close of the landlords' evidence the exception of the landlords to the pretrial order herein, as it related to the exhibition as evidence of the Standard Building Code of 1976. After the aforementioned evidentiary hearing on its admissibility, the Court found the ordinance adopting it had been validly enacted, overruled their exception on that ground, and allowed the exhibit to remain as evidence in the case.

That Code declared to be illegal a building in the municipality which is unsafe or which constitutes a fire hazard or in relation to existing use constitutes a hazard of safety or health by reason of inadequate maintenance, delapidation, etc. It is undisputed that a building official of the City found the subject building "unsafe" under that definition and gave one of the landlords, Mr. Keebler, written notice that it constituted such a hazard, his notice to Mr. Keebler of February 15 requiring abatement of the illegality within 10 days by the commencement of repairs or improvements thereto or to demolish and remove the building. That ordinance itself provided the landlords with the right to appeal from that decision of the building inspector and to appear and show cause before a board of adjustments and appeals at a specified time and place why they should not comply with the notice.

Mr. Keebler claims that he did not receive such written notice of February 15, but it is undisputed that he received a notice on February 26, that the subject building had been declared unsafe, from a notice posted on the entrance of such building. It is also undisputed that Mr. Keebler, from his earlier experience, understood fully the purport of the posted notice. Both he and his co-landlord Mr. Jackson testified they took no action by way of appeal or otherwise under the due process provisions of the ordinance on the theory "it would do no good" to do so.

Under the undisputed facts, then, the landlords were given by the Code an opportunity to be heard on such notice and proceedings as were necessary to safeguard their right to protect their property-interest in the subject building. This is the fundamental requirement of due process in a procedure affecting the property interests of the landlords in their building. *Anderson National Bank v. Luckkett* (1944), 321 U.S. 233, 246, 64 S.Ct. 599, 606, 88 L.Ed. 691, 705 (headnote 13). Due process was available to them but unused by them. Even if the landlords have succeeded in showing they received no notice at all of the pro-

ceedings to condemn their building, they would not have been entitled to monetary relief from the City or its officials herein on their claim of deprivation of procedural due process; the failure of those defendants to give notice to the landlords in disregard of their constitutional right thereto " * * * would at most justify an objection to the administrative determination * * *. It would then be needless to do more than nullify the action taken in disregard of the constitutional rights [of the landlords] to notice * * *." *American P. & L. Co. v. Securities and E. Com.* (1946), 329 U.S. 90, 108, 67 S.Ct. 133, 143, 91 L.Ed. 103, 117 (headnote 17). The landlords offered no evidence to show they sustained any monetary damage at all from the deprivation of their right to procedural due process, in the form of notice of the inspectors' intended action; as stated, *supra*, they assert their damage was caused proximately by their denial of further electrical power service by the Power Board.

In the light of this situation, the Court properly directed a verdict for the City and its officials on this issue at the close of all the evidence.