Elizabeth MYERS, et al.,
Plaintiffs-Appellants,

v.

CITY OF ALCOA, et al.,
Defendants-Appellees.

No. 84–5049.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 11, 1984.

Decided Jan. 9, 1985.

Opinion on Denial of Rehearing
March 6, 1985.

Gary D. Housepian (argued), James R. LaFevor, Knoxville Legal Aid Society, Knoxville, Tenn., for plaintiffs-appellants.

M.H. Gamble, Jr., Goddard & Gamble, Carl D. McDonald (argued), Maryville, Tenn., for defendants-appellees.

Before KRUPANSKY and WELLFORD, Circuit Judges, and PECK, Senior Circuit Judge.

KRUPANSKY, Circuit Judge.

Elizabeth Myers (Myers) appealed the summary dismissal of her § 1983 cause of action predicated upon the discontinuance of her electric utility service by the City of Alcoa and David Switzer, the manager of Blount Electric System and a city employee (hereinafter "defendants"). The following facts were stipulated by the parties in the proceedings below.

On April 5, 1983, defendants installed an electrical metering device at Myers' residence and began providing utility services. The meter was read by an employee of the defendant on April 15, 1983. Meyers paid the $13 bill which resulted from that reading.

On April 20, 1983, a city employee came to Myers' home and discovered that the city's meter had been removed and a Knoxville Utilities Board (KUB) meter placed in its stead. Myers denied any knowledge or participation in the removal of the original meter and unlawful replacement with a stolen KUB metering device. The city disconnected Myer's utility service on April 20, 1983, without notice or a hearing. Electric service was resumed to the Myers' residence on August 19, 1983, one day after Myers was found not guilty of electricity theft in a criminal trial.

On July 12, 1983, Myers, on behalf of herself and her three minor children, filed a complaint in federal district court seeking injunctive and declaratory relief against the defendants whom she alleged had violated her fourteenth amendment due process rights by terminating her electric service without notice.[1]

On December 16, 1983, the trial court granted defendants' motion for summary judgment. The essence of the court's decision was that plaintiff had no property interest in receiving electricity, because the theft constituted cause to terminate service. Thus, the court dismissed plaintiff's § 1983 complaint for failure to identify a property interest deserving of fourteenth amendment due process protection.

Plaintiff filed a timely appeal.

The district court's dismissal of the instant case was predicated on its interpretation and application of *Memphis Light, Gas & Water Division v. Craft*, 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978). In *Craft*, plaintiff brought an action challenging the constitutionality of a municipal utility's policies permitting termination of electric, gas and water services without notice and/or a predetermination hearing. To ascertain whether fourteenth amendment procedural protections attached to the termination of electricity by the city, the Supreme Court turned to Tennessee law for a definition of the "property" right allegedly involved. Citing *Trigg v. Middle Tennessee Electric Membership Corp.*, 533 S.W.2d 730 (Tenn. App.1975), *cert. denied*, (Tenn.S.Ct. March 15, 1976), the Court concluded:

> The outcome of that inquiry [i.e. whether Tennessee recognizes the reception of electricity as a property right] is clear in this case. In defining a public utility's privilege to terminate for nonpayment of proper charges, Tennessee decisional law draws a line between utility bills that are the subject of a bona fide dispute and those that are not.

436 U.S. at 9, 98 S.Ct. at 1560.

Since Tennessee did not permit a public utility to terminate service "at will" where a bona fide dispute existed, and further provided for an aggrieved customer to (1) enjoin a wrongful threat to terminate or (2) bring a subsequent action for damages or a refund, the Supreme Court in *Craft* held

---

1. Although electric service had been reinstated to the Myers' household, the request for injunctive relief is not moot because the relief sought includes a prayer that defendants be enjoined from terminating plaintiff's services in the future without a pretermination hearing. (In addition, plaintiff seeks "such damages as proof shall determine" and attorney's fees and costs.)

that these protections support a finding of a state-recognized property interest in receiving electricity which constitutes "a 'legitimate claim of entitlement' within the protection of the Due Process Clause." 436 U.S. at 11–12, 98 S.Ct. at 1561–1562.

In further support of its holding that Tennessee recognizes a property right in the receipt of electricity, the Supreme Court analogized the situation in *Craft* to cases such as *Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974) and *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976), in which it was held that where a city or federal employee could only be removed "for cause," as opposed to serving merely at the "will" of his superiors, a constitutionally recognized property interest exists which results in such employment being accorded fourteenth amendment due process protection. 436 U.S. at 11, n. 11, 98 S.Ct. at 1561, n. 11.

In the instant case, the court below viewed *Craft's* interpretation of *Trigg* as delineating two distinct situations. The first is where a customer fails to pay an electric bill and the amount due for service is undisputed. In that circumstance, the utility company is permitted to terminate service without notice since no property interests attaches which would invoke fourteenth amendment safeguards. In the second situation, where a dispute of the amount due from the customer is in issue, a significant property interest exists which prohibits the utility company from terminating service without prior notice to the customer. Thus, some type of pre-termination hearing as to the dispute is mandated.

Since there is no precedent addressing the issue of a theft of electricity and its impact on terminating service with or without a pretermination hearing, the district court concluded that pirated electricity, albeit by an undetermined person, brings this case within the analogy of an *undisputed* nonpayment, which under Tennessee law, permits a utility company to terminate service without infringing on a protected property right of the recipient. The court reasoned:

Plaintiff would have been entitled to procedural due process if she had a property interest in receiving electricity. 436 U.S. 1 [98 S.Ct. 1554, 56 L.Ed.2d 30]. In Tennessee a customer has a property interest in receiving electricity unless undisputed cause exists for termination. See *Trigg v. Middle Tennessee Electricity Membership Corp.,* 533 S.W.2d 730 (Tenn.App.1975), *cert. denied,* (Tenn. 1976). Although there may be a dispute as to who was stealing electricity, it is undisputed that electricity was being stolen at plaintiff's residence. This is sufficient cause to terminate electrical service. A person has no due process right to stolen property even where the person has no knowledge that the property was stolen. *See Parkam [Parham] v. Riley,* 44 Tenn. (4 Cold.) 5 (1867).

▮ The district court's pronouncement appears flawed in at least two respects. First, as recognized in *Craft,* public utilities in Tennessee are obligated to provide service to "all the inhabitants of the city of its location alike, without discriminating, [and] *without denial, except for good and sufficient cause,*" 436 U.S. at 11, 98 S.Ct. at 1561. Therefore, like the employees in *Arnett* and *Bishop* both, *supra,* who had an expectation of continued employment (and thus a property right) because they could not be terminated except "for cause," a recipient of electrical service in Tennessee has a property right in the continuation of electric service because it cannot be terminated except "for good and sufficient cause." Once it is determined that such a property right exists, the procedural due process protections which attach to it cannot be discarded simply because the utility unilaterally determined that it has sufficient cause to terminate. Stated differently, the "property right" which invokes due process considerations does not cease to exist simply because the utility's claim appears to be *prima facie* valid. Rather, as recently observed by this circuit in *Lee v. Western Reserve Phychiatric Habilitation Center, et al.,* 747 F.2d 1062 (6th Cir.1984), once a property interest is established, federal due process attaches

to protect the interest from being extinguished without some type of pretermination hearing. At 1067–1068. This conclusion is supported by the language in *Craft* which reaffirms the standard set forth in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) for determining the specific dictates of due process in a given case. 436 U.S. at 17–18, 98 S.Ct. at 1564–1565.

In *Mathews*, the Supreme Court pronounced that the "process due" in a given case requires consideration of three distinct factors: (1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of such interest through the procedures currently used, and the probable value, if any, of additional or substitute safeguards; and (3) the government's interest, including the administrative and fiscal burdens that additional safeguards would entail. *Mathews*, 424 U.S. at 3334–335, 96 S.Ct. at 903.

In the instant case, it is clear that the "private interest," i.e., the right to continue receiving electricity, is of the highest order. Tennessee recognizes this fact by including electricity in the list of services which it deems as "essential" in its landlord-tenant legislation. *See e.g.*, T.C.A. § 66–28–502(a)(3) (landlord is subject to civil penalties for failing to provide "essential services" which include gas, heat, and electricity.) As the *Trigg* court opined:

Moreover, we recognize that electric cooperatives in the state of Tennessee enjoy a monopolistic position that spawns certain rights and benefits. A concomitant of these rights and benefits is a duty to use a corresponding degree of care to protect the public. We hold that in Tennessee a public utility, when terminating service to a customer, must act reasonably when the discontinuance of the service might present an obvious danger of damage to the property of the customer. *See Washington Gas Light v. Aetna Casualty & Sur. Co.*, 250 Md. 325, 242 A.2d 802 (1968).

533 S.W.2d at 734.

And finally, the Supreme Court in *Craft* took judicial notice that "[t]he customer's interest is self-evident," as "[u]tility service is a necessity of modern life," the discontinuance of which "for even short periods of time may threaten health and safety." 436 U.S. at 18, 98 S.Ct. at 1565.

The result of the application of the second prong of the *Mathews*, test, i.e. the "risk of erroneous deprivation," is also self-evident in this case. As was determined at the criminal trial of Myers four months after her electric service was disconnected, she was not guilty of the theft of electricity. Furthermore, she had continually claimed lack of knowledge and participation in the removal and replacement of the meter assigned her. In addition, there is nothing in the record from which it can be inferred that Myers refused to pay the reasonable value of an estimated amount of electricity consumed at her residence during the period in question. And finally, it should be noted that the Tennessee Code permits the utility to pursue civil remedies, including treble damages, for electricity which has been pirated. *See* T.C.A. § 39–3–938 and § 39–3–939. Thus, the "risk of erroneous deprivation" under the current system is great as to the customer, while virtually a nullity as far as the defendant supplier is concerned.

And finally, *Mathews* requires this court to consider the fiscal and administrative burden on the utility company in providing pre-termination hearings. As *Craft* clearly mandated that a customer who disputes a bill be given the opportunity to meet "with a responsible employee empowered to resolve the dispute ... well in advance of the scheduled date of termination," 436 U.S. at 18, 98 S.Ct. at 1565, the same mechanism could be employed, at no additional burden on the defendant, in situations like the one at bar where the customer disputes his or her culpability in the theft of defendant's electricity.

Defendant cites the case of *Jackson v. Davis*, 530 F.Supp. 2 (E.D.Tenn.), *aff'd without opinion*, 667 F.2d 1026 (6th Cir. 1981) for the proposition that there was no need for a hearing in this case because there was "cause" to terminate service. This is an incorrect characterization of *Jackson*. In that case, the landlord was notified by the city that his building was unsafe because of a defective or dangerous electric wiring system. Unlike the instant case, the landlord in *Jackson* had the opportunity to correct the system or request an appeal and hearing. Despite notice, the landlord failed to avail himself of these remedies, and the city ordered the Power Board to disconnect service 11 days after

notice. Clearly, the resumption of contin-·ued services in *Jackson* would have been a safety and health hazard because of the defective electric wiring system. Moreover, the customer did not dispute the cause for termination and did not avail himself of the due process protections. *Jackson* at 8. In contrast, plaintiff herein disputed the cause for termination, the defendant would not have created a hazard or violated the law by resuming service if it had provided another meter, and no due process protections were afforded plaintiff.

Finally, defendant, utilizing telephone service cases, argues that it had a duty to prevent violations of the law by removing the meter from plaintiff's residence.[2] The analogy is poorly taken because termination of telephone service does not usually create the same health hazard as termination of water or electricity. In addition, plaintiff informed the defendant of her intent to continue to pay for the service. Thus, it was not a situation, as in telephone company cases, involving a *continued* illegality.

■ In sum then, the district court erred in failing to recognize the important property right at issue herein which entitled plaintiff to notice and a pretermination hearing prior to termination of electric service.

The final error in the district court's decision is its analogy of the instant case to a situation where property is stolen and the thief, or even a bona fide purchaser, seeks to retain the property. The court below concluded:

> A person has no due process right to stolen property even where the person has no knowledge that the property was stolen. *See Park [Parham] v. Riley*, 44 Tenn. (4 Cold.) 5 (1867).

In this respect, it appears that the district court failed to recognize that plaintiff's property interest at stake was the right to receive continued electrical service, for which she was willing to pay, and not the right to any tangible property (such as the meter itself) which would make the Tennessee decision of *Parkam [Parham]* relevant. Since Myers was not attempting to retain stolen property, *Parkam [Parham]* is inapposite to the instant case.

**2.** These cases include *Palma v. Powers,* 295 F.Supp. 924, 939 (N.D.Ill.1962) and *Telephone News Systems, Inc. v. Illinois Bell Telephone Co.,*

Based upon Tennessee law as announced in *Trigg* and interpreted by the Supreme Court in *Craft*, it is clear that a property right exists in the continued receipt of electricity. Thus, plaintiff's rights were violated when her service was terminated without any procedural safeguards to protect her right. *Craft* instructs that at a minimum, plaintiff should have been afforded notice of the proposed termination and the opportunity to discuss the theft with the utility in an effort to resolve the problem before the scheduled termination. Thus, the case should be reversed and remanded with instructions to the district court to enter an order accordingly and to determine the damages, if any, to which plaintiff may be entitled.

Costs are awarded to plaintiffs pursuant to Fed.R.App.P. 38.

## ON REHEARING

WELLFORD, Circuit Judge, concurring.

I continue to adhere to the original opinion in this case that the district court erred in granting defendants-appellees' motion for summary judgment. As stated in Judge Krupansky's opinion, it is clear that *Memphis Light, Gas and Water Division v. Craft*, 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978), establishes a public utility's property interest in continued service. Thus the district court erred in granting summary judgment on the grounds that the utility consumer in the instant case had no property interest that deserved due process protection.

I am persuaded by the petition, however, that the most proper course would be to remand the case for disposition on all issues, including liability as well as damages. The district court is the best body to make the initial determination about how much process is due and whether that standard was violated based on the unusual facts in this case. The amount of due process required in the ordinary utility bill dispute situation of *Craft* may or may not be required here because, as the Supreme Court stated in *Craft* and elsewhere, "due process is flexible and calls for such procedural protections as the particular situation demands." 436 U.S. at 15 n. 15, 98 S.Ct. at 1563 n. 15.

220 F.Supp. 621, 623, *aff'd,* 376 U.S. 782, 84 S.Ct. 1134, 12 L.Ed.2d 83 (1963).