# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
December 10, 2014 Session

## TONYA D. THORNLEY v. U.S. BANK, N.A., ET AL.

### Appeal from the Circuit Court for Coffee County
### No. 39644        Vanessa A. Jackson, Judge

_____

### No. M2014-00813-COA-R3-CV – Filed June 30, 2015

_____

Plaintiff appeals the dismissal of her complaint on a motion for judgment on the pleadings. The complaint stemmed from a foreclosure on plaintiff's home. Plaintiff claimed that the foreclosing lender had no right to enforce the deed of trust because the underlying promissory note had been "sold into a securitized trust contemporaneously with the origination of the loan." She also alleged certain irregularities in connection with the foreclosure sale. For the reasons explained below, we affirm the dismissal of the complaint.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

W. NEAL MCBRAYER, delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ. joined.

Jonathan L. Miley (at oral argument), Nashville, Tennessee, and Carol A. Molloy (on brief), Lynnville, Tennessee, for the appellant, Tonya D. Thornley.

John R. Wingo and Lauren Paxton Roberts, Nashville, Tennessee, for the appellees, U.S. Bank, N.A., Federal Home Loan Mortgage Corp., and Mortgage Electronic Registration Systems, Inc.

## OPINION

### I. FACTUAL AND PROCEDURAL BACKGROUND

On March 24, 2004, Plaintiff, Tonya D. Thornley, refinanced the loan on her residence, located in Tullahoma, Tennessee, with U.S. Bank, N.A. In connection with the refinancing, Ms. Thornley executed a promissory note and a deed of trust for her residence. For the promissory note, U.S. Bank used a standard Federal National Mortgage Association ("Fannie Mae")/Federal Home Loan Mortgage Corporation ("Freddie Mac") form.[1] The promissory note called for monthly payments commencing on May 1, 2004, and continuing for the next thirty years. The deed of trust, which secured repayment of the promissory note, named Mortgage Electronic Registrations Systems, Inc. ("MERS") beneficiary, solely as nominee[2] for U.S. Bank and its successors and assigns.

According to Ms. Thornley, U.S. Bank sold the promissory note to "a securitized trust" shortly after it was executed. She claimed that she later attempted to obtain a modification of the loan but was told by U.S. Bank that, in order to qualify for a modification, she would have to stop making loan payments. She admitted to having ceased payments in 2009. On March 27, 2009, U.S. Bank sent Ms. Thornley a letter declaring a breach under the promissory note, stating the amount necessary to cure the breach, and advising that a foreclosure sale would follow if the note was not brought current within thirty days. Notwithstanding the letter, Ms. Thornley claimed, and still claims, that she is not in default under the promissory note.

Over two years later, in a letter dated July 1, 2011, Phillip Jones, a Nashville attorney, advised Ms. Thornley that he had been instructed by U.S. Bank to foreclose on her residence. The letter also advised Ms. Thornley that she should contact him if she desired to bring the note current. U.S. Bank named Mr. Jones substitute trustee under the deed of trust on August 8, 2011.

The foreclosure sale took place on November 22, 2011. U.S. Bank submitted a bid on behalf of Freddie Mac, which ultimately acquired the residence. According to Ms. Thornley, the bid by Freddie Mac was improper because it was a credit bid.

---

[1] The **MULTISTATE FIXED RATE NOTE**—Single Family—**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**, Form 3200.

[2] A "nominee" is "[a] party who holds bare legal title for the benefit of others." Black's Law Dictionary 1149 (9th ed. 2009).

On June 18, 2012, Ms. Thornley filed an action in the Circuit Court of Coffee County challenging the foreclosure. The complaint named U.S. Bank, MERS, Freddie Mac, Mr. Jones, and John Does 1 through 10 as defendants. The complaint asserted nine separate causes of action: (1) to quiet title; (2) fraudulent misrepresentation; (3) violation of the Fair Debt Collection Practices Act, Title 15 of the United States Code, §§ 1692–1692p; (4) violation of the Tennessee Consumer Protection Act, Tennessee Code Annotated §§ 47-18-101 to -129; (5) unjust enrichment; (6) civil conspiracy; (7) usury and fraud; (8) slander of title; and (9) promissory estoppel.

U.S. Bank, MERS, Freddie Mac, and Mr. Jones filed answers to the complaint. Mr. Jones also moved to dismiss the complaint for failure to state a claim upon which relief can be granted. In responding to the motion to dismiss, Ms. Thornley conceded that certain of the causes of action did not apply to Mr. Jones and that they should be dismissed. However, she maintained that causes of action were stated against Mr. Jones for violations of the Tennessee Consumer Protection Act and the Fair Debt Collection Practices Act and civil conspiracy. The trial court dismissed all causes of actions against Mr. Jones except for the claim under the Fair Debt Collection Practices Act.

Ms. Thornley requested and obtained leave to amend her complaint. The amended complaint, which was filed on June 19, 2013, added a cause of action for wrongful foreclosure/breach of contract, but otherwise was substantially similar to the original complaint. Once answers were filed to the amended complaint, Ms. Thornley filed a motion for partial summary judgment on the claim for wrongful foreclosure/breach of contract against U.S. Bank, MERS, and Freddie Mac. U.S. Bank, MERS, and Freddie Mac filed a motion for judgment on the pleadings or for dismissal for failure to state a claim upon which relief can be granted.

The trial court denied Ms. Thornley's request for partial summary judgment but granted the request of U.S. Bank, MERS, and Freddie Mac for judgment on the pleadings.[3] Ms. Thornley then voluntarily dismissed her claims against Mr. Jones with prejudice, and this appeal ensued.

---

[3] The order of dismissal is titled "ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS." However, the order also states that "[t]he Court finds that Plaintiff's First Amended Verified Complaint fails to state a claim on which relief can be granted and *Defendants' Motion should be granted*." (emphasis in original). On appeal, the parties treat the order as a judgment on the pleadings.

## II. ANALYSIS

On appeal, Ms. Thornley argues that dismissal of her action was not appropriate on the basis of either a judgment on the pleadings or failure to state a claim upon which relief can be granted. Ms. Thornley also argues that the trial court erred in denying her motion for partial summary judgment. We address the second issue first.

### A. DENIAL OF REQUEST FOR SUMMARY JUDGMENT

The requirements for a grant of summary judgment are well known. Summary judgment may be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04; *see also Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 83 (Tenn. 2008); *Penley v. Honda Motor Co.*, 31 S.W.3d 181, 183 (Tenn. 2000); *Byrd v. Hall*, 847 S.W.2d 208, 214-15 (Tenn. 1993). The party moving for summary judgment bears the burden of demonstrating both that no genuine dispute of material facts exists and that it is entitled to a judgment as a matter of law. *Martin*, 271 S.W.3d at 83. Where the moving party fails to meet its burden of production, "the burden does not shift to the nonmovant, and the court must dismiss the motion for summary judgment." *Shipley v. Williams*, 350 S.W.3d 527, 535 (Tenn. 2011).

When considering a motion for summary judgment, the trial court must view the evidence in the light most favorable to the opposing party and draw all reasonable inferences in the opposing party's favor. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). The court is not to "weigh" the evidence when evaluating a motion for summary judgment or substitute its judgment for that of the trier of fact. *Martin*, 271 S.W.3d at 87; *Byrd*, 847 S.W.2d at 211.

A trial court's decision on a motion for summary judgment enjoys no presumption of correctness on appeal. *Martin*, 271 S.W.3d at 84; *Blair v. W. Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004). We review the decision as a question of law. *Martin*, 271 S.W.3d at 84; *Blair*, 130 S.W.3d at 763. Accordingly, we must review the record de novo and make a fresh determination of whether the requirements of Tennessee Rule of Civil Procedure 56 have been met. *Eadie v. Complete Co.*, 142 S.W.3d 288, 291 (Tenn. 2004); *Blair*, 130 S.W.3d at 763.

Ms. Thornley moved for summary judgment on her wrongful foreclosure/breach of contract claim against U.S. Bank, MERS, and Freddie Mac. Specifically, Ms. Thornley claimed that U.S. Bank failed to comply with the notice of acceleration provisions found

in the deed of trust.  In pertinent part, the deed of trust provides as follows:

> 22. Acceleration; Remedies.  Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise).  The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property.  The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale.  If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law.  Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

In support of her motion, Ms. Thornley relied upon copies of the note, the deed of trust, the March 27, 2009 letter from U.S. Bank declaring the promissory note in default, and the substitute trustee's deed.

On appeal, Ms. Thornley asserts that she was entitled to partial summary judgment under Tennessee Code Annotated § 20-16-101.  That statute provides:

> In motions for summary judgment in any civil action in Tennessee, the moving party who does not bear the burden of proof at trial shall prevail on its motion for summary judgment if it:
>
> (1) Submits affirmative evidence that negates an essential element of the nonmoving party's claim; or
>
> (2) Demonstrates to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.

5

Tenn. Code Ann. § 20-16-101 (Supp. 2014). However, Tennessee Code Annotated § 20-16-101 is inapplicable to her motion because she bore the burden of proof at trial on her breach of contract claim. As the party with the burden of proof, in order to obtain summary judgment, Ms. Thornley was required to set forth undisputed facts that establish each element of her breach of contract claim and that entitle her to judgment as a matter of law. *See Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 9 n.6 (Tenn. 2008).

In this circumstance, Ms. Thornley simply failed to meet her burden of production. As a result, the burden of production did not shift to the nonmoving parties, and the trial court properly denied the motion for partial summary judgment. To recover for a breach of contract, a plaintiff must prove three elements: "(1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract." *Custom Built Homes v. G.S. Hinsen Co.*, No. 01A01-9511-CV-00513, 1998 WL 960287, at *3 (Tenn. Ct. App. Feb. 6, 1998). Although there was an enforceable contract, at best, Ms. Thornley established only one of the remaining two elements of her claim.

For the nonperformance element, Ms. Thornley produced a single letter from U.S. Bank.[4] According to Ms. Thornley, the letter failed to comply with the deed of trust's requirements for the notice of acceleration in three respects. First, Ms. Thornley argues that the letter failed to specify "the action required to cure the default." The letter provided that, in order the cure the default, Ms. Thornley "must send certified funds in the amount of $4651.38 for payments and $391.92 for late charges, plus any additional payments that may come due within thirty (30) days from the date of this letter." Second, Ms. Thornley argues that the letter failed to specify "a date . . . by which the default must be cured." The letter provided "[f]oreclosure and public sale of the property in accordance with the applicable state laws will follow if this account is not current within thirty (30) days." Finally, Ms. Thornley argues that the letter failed to inform her of "the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale."

We find "merit" only in Ms. Thornley's third argument. Although it does not specify a precise amount that must be paid to cure the default, the letter does provide sufficient information from which Ms. Thornley could determine the cure amount. She only had to look to the note to determine the monthly payment amount and add that to the past due payments and late charges. We decline to adopt an interpretation of the deed of

---

[4] It is apparent from the record that U.S. Bank provided other notices relative to the foreclosure sale, but U.S. Bank, MERS, and Freddie Mac concede for purposes of summary judgment that the March 27, 2009 letter is the notice of acceleration required under the deed of trust.

6

trust that requires the notice of acceleration to specify a calendar date by which the default must be cured. Specifying that further action would be taken after the expiration of thirty days was sufficient. However, the letter does fail to inform Ms. Thornley of the right to bring a court action to assert the nonexistence of a default or other defenses. Instead, the letter advises of "the right to assert in any foreclosure action the non-existence of a default and any other defense you may have to acceleration and foreclosure."

Even assuming, for the sake of argument, that omitting information in the notice on the right to bring a separate court action amounted to a breach of the deed of trust, the trial court properly denied Ms. Thornley's motion for summary judgment because she failed to establish the last element of her claim. Her motion contains nothing about damages arising from the alleged breach and, thus, fails to satisfy the burden of production. She failed to show how the technical defect in the notice prejudiced her by impairing her ability to either prevent or contest the foreclosure sale. *See, e.g.*, *Fontenot v. Wells Fargo Bank, N.A.*, 129 Cal. Rptr. 3d 467, 480 (Cal. Ct. App. 2011) ("[P]laintiff in a suit for wrongful foreclosure has generally been required to demonstrate the alleged imperfection in the foreclosure process was prejudicial to the plaintiff's interests.").

## B. GRANT OF JUDGMENT ON THE PLEADINGS

We review a judgment on the pleadings in the same manner as a dismissal for failure to state a claim.[5] *City of Alcoa v. Tenn. Local Gov't Planning Advisory Comm.*, 123 S.W.3d 351, 355 (Tenn. Ct. App. 2003). We must accept as true "all well-pleaded facts [of the party opposing the motion] and all reasonable inferences drawn therefrom." *McClenahan v. Cooley*, 806 S.W.2d 767, 769 (Tenn. 1991). We must accept as false "all allegations of the moving party which are denied." *Trigg v. Middle Tenn. Elec. Membership Corp.*, 533 S.W.2d 730, 733 (Tenn. Ct. App. 1975). Conclusions of law in the pleadings are ignored. *Id.* A judgment on the pleadings is appropriate only where

---

[5] A motion for judgment on the pleadings and a motion to dismiss for failure to state a claim upon which relief can be granted differ in three important respects. A motion for judgment on the pleadings may be made only after the pleadings are closed; a motion to dismiss for failure to state a claim may be made after the filing of the complaint. Tenn. R. Civ. P. 12.02, 12.03. The answer as well as the complaint may be considered on a motion for judgment on the pleadings. *See City of Alcoa v. Tenn. Local Gov't Planning Advisory Comm.*, 123 S.W.3d 351, 353, 355 (Tenn. Ct. App. 2003). Finally, "[a] motion for judgment on the pleadings . . . theoretically is directed towards a determination of the substantive merits of the controversy;" a motion to dismiss for failure to state a claim is directed to procedural defects or the statement of the claim for relief. 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1369 (3d ed. 2015). The differences notwithstanding, a judgment on the pleadings and a dismissal for failure to state a claim are both on the merits. *See* Tenn. R. Civ. P. 41.02(3).

"there are no issues of material fact and . . . only questions of law exist." *Rogers v. Atwork Corp.*, 863 F. Supp. 242, 244 (E.D. Pa. 1994) (discussing Federal Rule of Civil Procedure 12(c)).

U.S. Bank, MERS, and Freddie Mac moved for judgment on the pleadings. Additionally, they moved for dismissal of each count directed against them for failure to state a claim upon which relief can be granted. Therefore, from the first amended complaint, we must accept the following allegations of fact as true. Ms. Thornley resides in Tullahoma, Tennessee, on property she owns, having acquired her interest in 1998. In 2004, she signed a note naming U.S. Bank as payee and a deed of trust, which secures repayment of the note. The deed of trust named MERS as the beneficiary, solely as a nominee for the lender. The loan was "sold into a securitized trust." "[A]s part of the securitized loan transaction, [U.S. Bank] . . . retained only the loan servicing rights." The current owner of the note and deed of trust are unknown.

U.S. Bank did not fund the loan, rather "the Certificate Investors of the securitized Trust into which Plaintiff's loan was . . . placed . . . were the actual lenders with [the] beneficial interest in the Plaintiff's mortgage loan." U.S. Bank obtained an inflated appraisal of the property, permitting Ms. Thornley to borrow in excess of the property's value.

Ms. Thornley "stopped making payment in 2009[,] and [U.S. Bank] declared her in default." She "had been attempting to obtain a loan modification since 2009." A representative of U.S. Bank told Ms. Thornley "that in order for [U.S. Bank] to negotiate with her regarding a loan modification she would have to stop making payments on her loan." In negotiating the loan modification, U.S. Bank "merely gave [Ms. Thornley] a run around for over two years requesting that she forward certain documentation over and over again."

In 2011, MERS attempted to assign the note and deed of trust to U.S. Bank. MERS "did not order the assignment." An employee of U.S. Bank, "a robo-signer," executed the assignment.

U.S. Bank, as the "'owner/holder or as authorized agent, designee or service of the owner/holder,'" executed a substitution of trustee under the deed of trust. At the time, U.S. Bank was not the owner of the loan. A foreclosure sale was held on November 22, 2011, and U.S. Bank submitted the highest and best bid, on behalf of Freddie Mac in the amount of $102,000. The notice of the foreclosure sale provided the property would be sold to the highest bidder for cash, but the bid by U.S. Bank on behalf of Freddie Mac was actually a credit bid.

8

On these facts, the trial court properly dismissed the action. However, the dismissal on some causes of action should have been based on failure to state a claim upon which relief can be granted. Ms. Thornley equates ownership of the note with the ability to enforce it. However, before determining who can enforce the note, we must determine whether it is negotiable and, therefore, governed by Article 3 of the Uniform Commercial Code. Tenn. Code Ann. § 47-3-102 (2001). A "negotiable instrument"

> means an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it:
>
> (1)  Is payable to bearer or to order at the time it is issued or first comes into possession of a holder;
>
> (2)  Is payable on demand or at a definite time; and
>
> (3)  Does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money . . . .

*Id*. § 47-3-104(a) (Supp. 2014).

We conclude the note is negotiable. The note includes an unconditional promise to pay a fixed amount of money, $144,400.00. *See id*. § 47-3-106(a) (2001). The note is payable to the order of U.S. Bank, *see id*. § 47-3-109(b) (2001), and it is payable at a definite time, monthly installments with all outstanding sums being due and payments on April 1, 2034. *See id*. § 47-3-108(b) (2001). Finally, the note contains no other undertaking or instruction by Ms. Thornley or U.S. Bank other than the payment of money.[6]

---

[6] The note does include a prepayment provision that obligates Ms. Thornley to inform the note holder in writing if she is making a payment of principal before it is due. One commentator has argued that the inclusion of such a clause in the Fannie Mae/Freddie Mac form note renders it non-negotiable. Ronald J. Mann, *Searching for Negotiability in Payment and Credit Systems*, 44 UCLA L. Rev. 951, 971-72 (1997). However, other courts have rejected this contention. *See, e.g.*, *In re Walker*, 466 B.R. 271, 284 (Bankr. E.D. Pa. 2012); *HSBC Bank USA, Nat'l Ass'n v. Gouda*, No. A-1983-09T2, 2010 WL 5128666, at *3 (N.J. Super. Ct. App. Div. Dec. 17, 2010). We do as well. Negotiable instruments may include prepayment provisions. *See* Tenn. Code Ann. § 47-3-108(b). Requiring written notice prior to making a prepayment is a natural component of such provisions. Dale A. Whitman, *How Negotiability Has Fouled Up the Secondary Mortgage Market, and What to Do About It*, 37 Pepp. L. Rev. 737, 749

Because the note is negotiable, Ms. Thornley's allegations regarding ownership and faulty assignment are immaterial. Tennessee Code Annotated § 47-3-301, which governs who may enforce a negotiable instrument, provides "[a] person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument." *Id*. § 47-3-301 (2001). In these circumstances, possession of the note by U.S. Bank would permit it to enforce the note. *Id*.; *see* Tenn. Code Ann. § 47-1-201(21)(A) (Supp. 2014) ("holder" includes a person in possession if the instrument is payable to that person or to bearer).

Because the pleadings do not address possession of the note, we cannot conclude that there is no issue of material fact. However, we can conclude that the allegations made by Ms. Thornley related to ownership and faulty assignments fail to state a claim upon which relief can be granted.

We also conclude that U.S. Bank, Freddie Mac, and MERS were entitled to a judgment on the pleadings on the allegations related to the appointment of the substitute trustee. Successor trustees under deeds of trust are addressed by statute. Under Tennessee Code Annotated § 35-5-114, "[t]he beneficiary may, unless the deed of trust contains specific language to the contrary, appoint a successor trustee at any time by filing a substitution of trustee for record with the register of deeds of the county in which the property is situated." *Id*. § 35-5-114(b)(1) (2007). In this instance, the deed of trust provided that the lender, which was defined as U.S. Bank, "at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded." Therefore, as a matter of law, Ms. Thornley's claims relative to the appointment of the substitute trustee were appropriately dismissed.

Ms. Thornley's allegations relative to the negotiation of a loan modification and her failure to make payments were also appropriately dismissed on the pleadings. In considering the claim of promissory estoppel, our Supreme Court quoted with approval the following passage from the *Law of Contracts*:

"Detrimental action or forbearance by the promisee in reliance on a gratuitous promise, within limits constitutes a substitute for consideration, or a sufficient reason for enforcement of the promise without consideration. This doctrine is known as promissory estoppel. A promisor who induces

_____

(2010).

10

substantial change of position by the promisee in reliance on the promise is estopped to deny its enforceability as lacking consideration. The reason for the doctrine is to avoid an unjust result, and its reason defines its limits. No injustice results in refusal to enforce a gratuitous promise where the loss suffered in reliance is negligible, nor where the promissee's action in reliance was unreasonable or unjustified by the promise. The limits of promissory estoppel are: (1) the detriment suffered in reliance must be substantial in an economic sense; (2) the substantial loss to the promisee in acting in reliance must have been foreseeable by the promisor; (3) the promisee must have acted reasonable in justifiable reliance on the promise as made."

*Alden v. Presley*, 637 S.W.2d 862, 864 (Tenn. 1982) (quoting L. Simpson, *Law of Contracts* § 61 (2d ed. 1965)). According to Ms. Thornley, U.S. Bank promised "that if she stopped making payments on her loan they would 'work with her on a modification.'" Ms. Thornley references no other promise from U.S. Bank. From the allegations of the complaint, we conclude it was unreasonable for Ms. Thornley to refrain from making payments on her note for over two years. Certainly, by July 2011, when she received the first of the letters from Mr. Jones regarding a possible foreclosure, she should have been aware that modification of the note was no longer a possibility. However, she unreasonably continued in her course of action.

Finally, we conclude that the trial court properly dismissed the claim for breach of contract. The breach of contract claim stemmed solely from the March 27, 2009 letter from U.S. Bank declaring the note in default. Ms. Thornley argued the letter failed to comply with the notice of acceleration provision found in the deed of trust. When there is no dispute over the facts, as is the case here, "the issue of whether a party to a contract has breached a contractual provision is also a question of law." 23 Williston on Contracts § 63:15 (4th ed. 2015); *see also* 17B C.J.S. *Contracts* § 1034 (2015) ("Thus, when the facts are undisputed or conclusively established or can lead to only one reasonable answer, the question whether there has been a breach of a contract is one of law for the court.") Although in reviewing the denial of Ms. Thornley's motion for partial summary judgment we assumed a failure to comply with the deed of trust that amounted to a breach, we conclude the omission of the reference to a right to file an independent court action is not a breach of contract given the other disclosures contained in the letter, including the reference to "the right to assert in any foreclosure action the non-existence of a default and any other defense you may have to acceleration and foreclosure."

### III. CONCLUSION

For the reasons set forth above, the judgment of the trial court dismissing the case is affirmed.[7]

_____
W. NEAL MCBRAYER, JUDGE

---

[7] The Court of Appeals may affirm a judgment on different grounds than those relied on by the trial court when the trial court reached the correct result.  *Arnold v. City of Chattanooga,* 19 S.W.3d 779, 789 (Tenn. Ct. App. 1999); *Allen v. Nat'l Bank of Newport,* 839 S.W.2d 763, 765 (Tenn. Ct. App. 1992); *Clark v. Metro. Gov't,* 827 S.W.2d 312, 317 (Tenn. Ct. App. 1991); *Continental Cas. Co. v. Smith,* 720 S.W.2d 48, 50 (Tenn. 1986).