FILED
04/09/2018
Clerk of the
Appellate Courts

# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
November 14, 2017 Session

## LOCAL TV TENNESSEE LLC D/B/A WREG-TV v. N.Y.S.E. WOLFCHASE LLC D/B/A THE NEW YORK SUIT EXCHANGE

### Appeal from the Chancery Court for Shelby County
### No. CH-13-0586     Walter L. Evans, Chancellor

_____

### No. W2017-00675-COA-R3-CV

_____

This is a breach of contract action in which both parties assert affirmative claims. Plaintiff, a Memphis TV station, sued one of its advertisers for breach of an advertising agreement to recover approximately $511,000 for past advertising services. Defendant Advertiser filed a counterclaim under the Tennessee Consumer Protection Act, for constructive fraud, and for breach of contract. The trial court granted judgment on the pleadings with respect to the breach of contract claim in favor of Plaintiff and awarded damages of $510,000. Subsequently, the trial court granted Plaintiff's Motion to Dismiss Defendant's Second Amended Counter-Complaint in its entirety, finding that Defendant failed to state any claims upon which relief could be granted. Defendant appealed. We have concluded that Defendant's Answer constituted a denial that Defendant owed approximately $511,000 in unpaid advertising fees; therefore, Plaintiff's Motion for Judgment on the Pleadings should have been denied. We affirm the trial court's dismissal of Defendant's claims for constructive fraud; however, we have determined that the factual allegations in the Second Amended Counter-Complaint are sufficient to state claims for breach of contract, and claims under the Tennessee Consumer Protection Act. Therefore, we reverse the dismissal of these claims and remand for further proceedings.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in part; Reversed in part; and Remanded.

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S, and KENNY W. ARMSTRONG, J., joined.

Frank L. Watson, III and William E. Routt, III, Memphis, Tennessee, for the appellant, N.Y.S.E. Wolfchase, LLC d/b/a The New York Suit Exchange.

Justin N. Joy, William H. Haltom, Jr., and Laura L. Deakins, Memphis, Tennessee, for the appellee, Local TV Tennessee, LLC d/b/a WREG-TV.

## OPINION

Plaintiff, Local TV Tennessee, LLC d/b/a WREG-TV ("WREG"), is a Memphis TV station that touts itself as the "number one" channel to advertise on in the Memphis market. Defendant, N.Y.S.E. Wolfchase, LLC d/b/a The New York Suit Exchange ("NYSE"), is a retail seller of men's business and casual clothing located in East Memphis. Like many retailers today, NYSE depends heavily on television advertising in order to promote its products, obtain customers and generate sales.

WREG provided television advertising for NYSE for several years without issue. However, in November 2012, a dispute arose over the amount of money NYSE owed for past advertising. At that time, NYSE made it clear to WREG that it would be necessary for NYSE to pay WREG from future revenues that would be generated from continued advertising on WREG. NYSE also disputed whether WREG had performed all of the requested advertising. Nevertheless, the parties expressed a desire to continue doing business with one another. To resolve this dispute, on November 14, 2012, WREG and NYSE entered into a contract known as the NYSE/WREG Advertising Plan ("Advertising Plan"). The relevant portions of the one-page document are as follows:

1. Total [Accounts Receivable] balance due is approximately $511K.
2. Payment plan: Beginning 11/16/12 through 9/30/13. 50 postdated checks will be given to WREG for $10,220 each. 10 checks will be paid by 12/31/12 for a total of $102,220. 40 checks will be paid from 1/1/13 through 9/30/13 for a total of $408,800. All checks will be given to WREG upon acceptance of the agreement. Checks will be dated per the check schedule (see below).
3. Advertising spending: NYSE may spend up to $350K of new advertising during this same time period, 11/16/12 through 9/30/13, with a minimum required expenditure of $250K but not to exceed the maximum of $350K. A maximum of $75K to be used 11/16/12 through 12/31/12. The amount of advertising used shall never exceed the amount paid in per this agreement.

. . .

8. The January 2013 incentive trip will be rewarded.

Paragraph 1 of the contract stated NYSE owed an approximate balance of $511,000 to WREG for prior advertising. In order to pay off that balance, Paragraph 2, entitled "Payment Plan," detailed how NYSE agreed to tender 50 postdated checks in the amount of $10,220 each to WREG (totaling $511,000) that WREG would deposit each week pursuant to the agreed upon schedule. Paragraph 3, entitled "Advertising Spending," contemplated new advertising, whereby NYSE agreed to purchase, and

WREG agreed to provide, between $250,000 and $350,000 of new advertising over the same period. Additionally, pursuant to Paragraph 8, WREG agreed to award NYSE with an incentive trip (a vacation provided by WREG to certain advertisers free of charge) that was to take place in January 2013.

After both parties signed the Advertising Plan, NYSE stated it was ready, willing, and able to perform all of its obligations under the agreement, and had already partially performed by delivering all of the postdated checks to WREG. Immediately after signing the Advertising Plan, WREG began airing NYSE advertisements; however, the following day, WREG notified NYSE that it would have to agree to modify the Advertising Plan to remove the incentive trip. When NYSE refused to sign a new or amended agreement, WREG returned all of the postdated checks and ceased all advertising for NYSE. The timing of this dispute between the parties happened during a peak retail season, the week before Thanksgiving.

WREG filed suit on May 18, 2013, asserting claims for breach of contract, accounting, quantum meruit, and demanding damages for approximately $511,000 in unpaid advertising spending. NYSE filed its Answer and Counter-Complaint on June 13, 2013, which was subsequently amended on July 3, 2013. In its Counter-Complaint and Amended Counter-Complaint, NYSE asserted its own claims for breach of contract against WREG for refusing to honor the Advertising Plan as written. NYSE alleged it suffered significant damages caused by WREG's breach because it was forced to immediately purchase replacement advertising at a higher rate in the open market during a peak retail season (Thanksgiving and Christmas). Furthermore, it was unable to advertise on the "number one" station in the marketplace, it was forced to continue to purchase replacement advertising at a higher rate throughout the term of the Advertising Plan, and NYSE has been unable to replace WREG with an advertising provider with the coverage and viewership of WREG.

Subsequently, WREG filed a Motion for Judgment on the Pleadings and Motion to Dismiss the Amended Counter-Complaint for failure to state a claim for which relief may be granted. Therein, WREG claimed it was entitled to judgment on the pleadings merely because NYSE admitted the allegations contained in Paragraph 10 of the Complaint. Paragraph 10 stated that on or about November 14, 2012, WREG and NYSE entered into the Advertising Plan. According to WREG, NYSE's admission that the parties entered into the Advertising Plan implied that NYSE also admitted to owing approximately $511,000 in unpaid advertising fees. WREG further represented that "the only performance that was required [in the Advertising Plan] was on the part of [NYSE]" and that "[t]he contract was for the payment of a debt, not some future business transaction." NYSE filed its response to WREG's Motion for Judgment on the Pleadings on October 30, 2013. Although NYSE admitted in its Answer that the parties entered into a contract, it specifically denied every allegation pertaining to an alleged amount owed for previous

advertising. NYSE also maintained that the Advertising Plan required performance on the part of both parties, and that the agreement contemplated new advertising spending.

Meanwhile, on October 9, 2013, NYSE also filed an Answer and Second Amended Counter-Complaint, in which NYSE asserted additional causes of action against WREG, including claims for violating the Tennessee Consumer Protection Act and constructive fraud.

On January 24, 2014, the trial court granted WREG's Motion for Judgment on the Pleadings as to the breach of contract claim, finding that NYSE breached the Advertising Plan, and awarded WREG $510,000 in damages[1]. In the same order, the trial court denied WREG's Motion to Dismiss NYSE's Amended Counter-Complaint, finding that NYSE had stated a claim for breach of contract against WREG as a matter of law.

Shortly thereafter, on February 10, 2014, WREG filed a second Motion to Dismiss, this time seeking to dismiss all claims asserted in the operative Second Amended Counter-Complaint. Following a hearing on September 30, 2016, the trial court granted WREG's Motion to Dismiss the Second Amended Counter-Complaint in its entirety. In its oral ruling, the trial court stated that the allegations contained within NYSE's Second Amended Counter-Complaint were not "sufficient to maintain such an action." The trial court specified in its order entered on November 1, 2016, that "[a]n order granting judgment on the pleadings in the amount of $510,000 against [NYSE] previously on January 24, 2014 is hereby ENTERED as a final judgment pursuant to Tennessee Rules of Civil Procedure 54 and 58," thereby rendering its January 24, 2014, order granting WREG judgment on the pleadings final and appealable. NYSE timely appealed.

## ANALYSIS

NYSE raises two issues, which we have rephrased as follows:

1. Whether NYSE pled sufficient facts in its Answer to constitute a denial, such that a judgment on the pleadings would not be appropriate.
2. Whether the trial court erred by granting WREG's Motion to Dismiss NYSE's Second Amended Counter-Complaint.

---

[1] It is not clear from the record how the trial court reached its decision to award $510,000 in damages. The parties themselves acknowledge a dispute of approximately $511,000 in unpaid advertising fees.

I.   JUDGMENT ON THE PLEADINGS

The trial court entered a judgment on the pleadings in favor of WREG for its claim for breach of the Advertising Plan contract and awarded it a judgment in the amount of $510,000. NYSE insists this was error. We agree with NYSE.

A motion for judgment on the pleadings may be filed "[a]fter the pleadings are closed but within such time as not to delay the trial." Tenn. R. Civ. P. 12.03. It "involves the consideration of nothing other than what its title suggests; the motion requests that a court grant judgment based on the pleadings alone." *Sakaan v. Fedex Corp., Inc.*, No. W2016-00648-COA-R3-CV, 2016 WL 7396050, at *5 (Tenn. Ct. App. Dec. 21, 2016). "Accordingly … the trial court's resolution of the motion is not dependent on anything other than the pleadings." *Id.* In reviewing a trial court's ruling on a plaintiff's motion for judgment on the pleadings, "we must accept as true 'all well-pleaded facts' alleged by the defendant and draw 'all reasonable inferences.'". *Cherokee Country Club, Inc. v. City of Knoxville,* 152 S.W.3d 466, 470 (Tenn. 2004) (quoting *McClenahan v. Cooley,* 806 S.W.2d 767, 769 (Tenn.1991)). Moreover, we are required to treat as false all of a plaintiff's allegations that are denied by the defendant. *See Trigg v. Middle Tenn. Elec. Membership Corp.,* 533 S.W.2d 730, 732-33 (Tenn. Ct. App. 1975); *see also Trau-Med of Am., Inc. v. Allstate Ins. Co.,* 71 S.W.3d 691, 696-97 (Tenn. 2002). Conclusions of law are not admitted, and judgment on the pleadings should not be granted unless the moving party is clearly entitled to judgment. *Trigg,* 533 S.W.2d at 733. Thus, we review the trial court's decision de novo without a presumption of correctness. *Young v. Barrow*, 130 S.W.3d 59, 63 (Tenn. Ct. App. 2003) (citing *Stein v. Davidson Hotel Co.*, 945 S.W.2d 714, 716 (Tenn.1997)).

In its Answer, NYSE admitted the allegations contained in Paragraph 10 of the Complaint, which stated:

> 10. On or about November 14, 2012, [WREG] and [NYSE] entered into the attached (as Exhibit A) agreement entitled "NYSE/WREG Advertising Plan" (the "Advertising Plan Agreement") which had been agreed to by [NYSE] on or about November 13, 2012.

According to WREG, implicit in this admission is that NYSE admitted to owing WREG approximately $511,000 in unpaid advertising fees. NYSE insists it did not. Although NYSE admitted in its Answer that the parties entered into a contract, it specifically denied every allegation pertaining to an alleged amount owed for previous advertising. WREG's Complaint stated, in pertinent part:

COUNT II — CLAIM FOR BREACH OF ADVERTISING PLAN
CONTRACT

19. Pleading in the alternative, [NYSE] and [WREG] entered into the Advertising Plan Agreement as set forth above which is and was an enforceable contract.

20. [NYSE] is in breach of the Agreement as set forth in this Complaint.

21. [WREG] is entitled to damages totaling no less than $511,920.00 as result of the breach by [NYSE] as forth in this Complaint.

With respect to Paragraph 19 of the Complaint, NYSE neither admitted nor denied the allegations contained therein, and further contended that the Advertising Plan "was enforceable until [WREG]'s breach." NYSE specifically denied the allegations contained in Paragraphs 20 and 21.

As is the case here, "a motion for judgment on the pleadings made by the plaintiff challenges the legal sufficiency of the defenses pled by the defendant." *Brewer v. Piggee*, No. W2006-01788-COA-R3-CV, 2007 WL 1946632, at *6 (Tenn. Ct. App. July 3, 2007) (citing Robert Banks, Jr. and June F. Entman, *Tennessee Civil Procedure* § 5-6(l) (1999)). Accordingly, we are required to treat as false all of WREG's allegations that are denied by NYSE. *See Trigg*, 533 S.W.2d at 732-33; *see also Trau-Med of Am., Inc.*, 71 S.W.3d at 696-97.

Tenn. R. Civ. P. 12.03 requires us to look only at the pleadings to determine whether NYSE's Answer constitutes a denial that WREG was entitled to damages in the amount of approximately $511,000 as a result of an alleged breach of the Advertising Plan. We cannot consider outside evidence. Although NYSE admitted that it entered into the Advertising Plan with WREG, NYSE denied throughout its Answer that it breached the Advertising Plan or that it owed approximately $511,000 in unpaid advertising fees. Because NYSE denies that it owed approximately $511,000 for a breach of contract claim throughout its Answer, the pleadings contain factual disputes. Therefore, WREG's Motion for Judgment on the Pleadings should have been denied.

II.    MOTION TO DISMISS

We next examine whether the trial court erred by granting WREG's Motion to Dismiss NYSE's Second Amended Counter-Complaint.

A Tenn. R. Civ. P. 12.02(6) motion to dismiss challenges only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence. *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011). The resolution of a Rule 12.02(6) motion to dismiss is determined by an examination of the pleadings alone. *Id*. A defendant who files a motion to dismiss "admits the truth of all of the relevant and material allegations contained in the complaint, but . . . asserts that the

allegations fail to establish a cause of action." *Id*. (quoting *Brown v. Tenn. Title Loans, Inc*., 328 S.W.3d 850, 854 (Tenn. 2010)).

When considering a motion to dismiss, courts "must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences." *Id*. (quoting *Tigg v. Pirelli Tire Corp*., 232 S.W.3d 28, 31-32 (Tenn. 2007)). A trial court should grant a motion to dismiss "only when it appears that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." *Id*. (quoting *Crews v. Buckman Labs. Int'l, Inc*., 78 S.W.3d 852, 857 (Tenn. 2002)). We review the trial court's legal conclusions regarding the adequacy of the complaint de novo. *Id*.; *Brown*, 328 S.W.3d at 855.

### A. BREACH OF CONTRACT

It is well settled that a claim for breach of contract requires "(1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract." *C & W Asset Acquisition, LLC v. Oggs*, 230 S.W.3d 671, 676-77 (Tenn. Ct. App. 2007) (quoting *ARC LifeMed, Inc., v. AMC-Tennessee, Inc.,* 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005)).

In its Second Amended Counter-Complaint, NYSE alleged that the parties entered into the Advertising Plan on or about November 14, 2012. NYSE further alleged that after executing the agreement, both parties partially performed. NYSE alleged that it performed by immediately delivering 50 postdated checks in the amount of $10,220 each to WREG, and that NYSE performed by immediately airing NYSE's commercials. NYSE also contended that WREG breached the Advertising Plan the following day when WREG insisted that NYSE agree to remove Paragraph 8. Specifically, NYSE alleged that WREG stated that it would not honor the Advertising Plan unless the incentive trip provided for in Paragraph 8 was removed. NYSE further alleged that when it refused, WREG immediately stopped airing advertisements on behalf of NYSE and returned all 50 postdated checks. The Second Amended Counter-Complaint also asserted that WREG intentionally and/or in bad faith breached its contract with NYSE by unilaterally changing the terms of the contract when it notified NYSE that it would not honor Paragraph 8 of the Advertising Plan, and by ceasing to air advertising spots on behalf of NYSE.

With regard to damages resulting from an alleged breach of contract, NYSE claimed it suffered monetary damages, as it was forced to immediately purchase replacement advertising at a higher rate in the open market during the peak retail sales time of the year, Thanksgiving and Christmas. NYSE further alleged damages in the form of lost profits because NYSE was unable to advertise on the "number one" station in the marketplace, and has been unable to replace WREG with an advertising provider with the coverage and viewership of WREG.

As stated earlier, by filing a Rule 12.02(6) motion to dismiss, WREG admits the truth of the relevant and material allegations in NYSE's Second Amended Counter-Complaint. *Webb*, 346 S.W.3d at 426. Thus, we assume the facts alleged above are true, and we must give NYSE the benefit of all reasonable inferences to be drawn from the factual allegations in the Second Amended Counter-Complaint. *Id.*

Here, NYSE pled that the Advertising Plan existed and was enforceable against WREG, that WREG failed to perform under its terms by, *inter alia*, refusing to provide NYSE with the incentive trip and refusing to air additional advertising, that WREG's nonperformance constituted a breach of the contract, and that NYSE was damaged by WREG's breach. The trial court ruled that the Advertising Plan was not, as NYSE alleged, an agreement to provide services but rather an attempt to repay an existing debt; however, this factual finding directly contradicts NYSE's allegations which must be assumed to be true at the pleadings stage.

Based upon our examination of the Second Amended Counter-Complaint, liberally construing the pleadings, presuming all factual allegations as true, and drawing all reasonable inferences in favor of NYSE, we find that NYSE has pled its breach of contract claims sufficiently to survive a Tenn. R. Civ. P. 12.02(6) motion to dismiss for failure to state a claim upon which relief could be granted. Therefore, we reverse the trial court's dismissal of the breach of contract claims.

## B. TENNESSEE CONSUMER PROTECTION ACT

The trial court dismissed NYSE's claim under the Tennessee Consumer Protection Act for failure to state a claim upon which relief could be granted. NYSE insists this was error. We agree.

The Tennessee Consumer Protection Act ("TCPA") was enacted in 1977, in part, to protect consumers and legitimate business enterprises from unfair and deceptive acts and practices occurring "in the conduct of any trade or commerce" in the state and to provide a means "for maintaining ethical standards of dealing between persons engaged in business and the consuming public." Tenn. Code Ann. §§ 47–18–102(2), –102(4); *Fayne v. Vincent*, 301 S.W.3d 162, 172 (Tenn. 2009). The TCPA is expressly remedial. Tenn. Code Ann. § 47–18–115; *Tucker v. Sierra Builders,* 180 S.W.3d 109, 115 (Tenn. Ct. App. 2005). Therefore, it should be construed liberally and broadly to accomplish its purposes. Tenn. Code Ann. § 47–18–102; *Myint v. Allstate Ins. Co.,* 970 S.W.2d 920, 926 (Tenn. 1998); *Ganzevoort v. Russell,* 949 S.W.2d 293, 297 (Tenn. 1997).

Under the TCPA, "[a]ny person who suffers an ascertainable loss of money … as a result of the use or employment by another person of an unfair or deceptive act or practice described in § 47-18-104(b) and declared to be unlawful by this part, may bring

an action individually to recover actual damages." Tenn. Code Ann. § 47-18-109(a)(1). "Person" is defined as "a natural person, individual, governmental agency, partnership, corporation, trust, estate, incorporated or unincorporated association, and any other legal or commercial entity however organized." Tenn. Code Ann. § 47-18-103(13). Corporations and other entities included within the Act's definition of "person" have standing to bring a cause of action for damages under the TCPA. *ATS Se., Inc. v. Carrier Corp.*, 18 S.W.3d 626, 630 (Tenn. 2000). It is also well settled that the TCPA applies to transactions involving the provision of services. *See Johnson v. John Hancock Funds*, 217 S.W.3d 414, 424 (Tenn. Ct. App. 2006) (holding that pursuant to the TCPA, providing investment advice is a "service" and a "consumer transaction" for purposes of providing coverage under the Act).

Unfair or deceptive acts or practices which violate the TCPA include, but are not limited to, "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship approval, status, affiliation or connection that such person does not have," Tenn. Code Ann. § 47-18-104(5); and "[r]epresenting that a consumer transaction confers or involves rights, remedies or obligations that it does not have or involve or which are prohibited by law." Tenn. Code Ann. § 47-18-104(12).

In its Second Amended Counter-Complaint, NYSE alleged, in pertinent part,

22. Pursuant to the TCPA, Tenn. Code Ann. § 47-18-109(a)(1), [NYSE] is entitled to bring a private action for [WREG]'s violations of the TCPA because, among other things, it has suffered an ascertainable loss of money and good credit standing.

23. [WREG]'s wrongful conduct violates Tenn. Code Ann. § 47-18-104(5) because [WREG] represented that their services carried with it characteristics and benefits (namely, the airing of advertisements) which [WREG] would (and did not) in fact not provide.

24. [WREG]'s wrongful conduct also violates Tenn. Code Ann. § 47-18-104(12) because [WREG] represented that its services involved rights and obligations (namely, the airing of television advertisements) which [WREG] would (and did not) in fact not provide.

As discussed above, in reviewing a Tenn. R. Civ. P. 12.02(6) motion to dismiss, this court has the task of determining whether the pleadings state a claim upon which relief can be granted. *Webb*, 346 S.W.3d at 426. Such a motion only challenges the legal sufficiency of the complaint; it does not challenge the strength of the plaintiff's proof. *Id.*

- 9 -

As we examine the allegations contained in NYSE's Second Amended Counter-Complaint, we note that NYSE and WREG are both Limited Liability Companies, and determine that both are "persons" as defined by the TCPA. *See* Tenn. Code Ann. § 47-18-103(13). NYSE alleged that by signing the Advertising Plan, WREG represented it would provide beneficial advertising services; namely, that NYSE was being provided with advertising by the "number one" station in the Memphis market. *See* Tenn. Code Ann. § 47-18-104(5). NYSE further alleged that by entering into the contract with WREG, WREG represented that it would provide additional advertising and an incentive trip, and then refused to provide either. *See* Tenn. Code Ann. § 47-18-104(12). Accordingly, NYSE stated a claim under the TCPA.

### C. Constructive Fraud

The trial court dismissed NYSE's claim for constructive fraud, holding that the allegations were not sufficient to maintain an action. We agree.

In *Kincaid v. SouthTrust Bank*, 221 S.W.3d 32, 39-40 (Tenn. Ct. App. 2006), this court explained constructive fraud as:

> a breach of a legal or equitable duty which is deemed fraudulent because of its tendency to deceive others, to violate public or private confidence, or to injure public interests. Constructive frauds are acts, statements or omissions which operate as virtual frauds on individuals. They concern a breach of a legal or equitable duty, with or without fraudulent intent, and entail as an attribute of fraud, conduct which reasonably can be expected to influence the conduct of others. Constructive fraud is essentially fraud without the element of intent. Neither actual dishonesty of purpose nor intent to deceive is an essential element of constructive fraud.

(internal citations omitted).

Although we are required to construe the factual allegations in NYSE's favor, and therefore accept the allegations of fact as true, we are not required to give the same deference to conclusory allegations. *Riggs v. Burson*, 941 S.W.2d 44, 48 (Tenn.1997). Additionally, we are not required to accept as true the inferences to be drawn from conclusory allegations. *Id.*

Here, NYSE's Second Amended Counter-Complaint fails to state with particularity any acts, statements or omissions by WREG that operate as virtual frauds. Instead, it merely sets forth conclusory statements alleging that WREG induced NYSE to enter into the Advertising Plan with promises of future advertising and the incentive trip, and then proceeded to willfully renege on its promises. NYSSE also alleges that WREG "did not intend to honor [its] legal obligation," however, it identifies no facts to support

this conclusory allegation. Therefore, we affirm the trial court's dismissal of NYSE's claim for constructive fraud.

## IN CONCLUSION

We reverse the grant of WREG's Motion for Judgment on the Pleadings for breach of contract and the award of a judgment in the amount of $510,000, reverse the dismissal of NYSE's claims for breach of contract and its claim under the TCPA, and affirm the dismissal of NYSE's claim for constructive fraud. Further, this matter is remanded to the trial court for further proceedings consistent with this opinion with costs of appeal assessed equally against the parties.

_____
FRANK G. CLEMENT JR., P.J., M.S.